# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GREGORY B. MYERS,

     Plaintiff,

     v.

McNAMEE, HOSEA, JERNIGAN, KIM,
GREENAN, & LYNCH, P.A., *et al.*

     Defendants.

\* \* \*

Civil Action No. 8:18-cv-03460-PX

## <u>MEMORANDUM OPINION</u>

Pending before the Court in this breach of contract and legal malpractice case is Defendant McNamee, Hosea, Jernigan, Kim, Grennan & Lynch, P.A.'s ("McNamee's") motion to dismiss or in the alternative for summary judgment, ECF No. 6, and Trustee Roger Schlossberg's ("the Trustee's") motion to dismiss for lack of jurisdiction and for insufficient process, ECF No. 9. Also pending is the Trustee's motion to strike Myers' suggestion of Bankruptcy. ECF No. 22. Although the Court ordered Myers to respond to the outstanding motions to dismiss, ECF No. 14, he has failed to do so and time for responding has long since passed. *See* Loc. R. 105.2. The motion to strike is fully briefed. The Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants the Trustee's motion to strike and both motions to dismiss.

## I.    Background[1]

This case represents one matter in a litany of litigation stemming from Myers'

---

[1] The following facts are either taken from Myers' Complaint and assumed to be true, or from docket entries in this Court and the Bankruptcy Court of which the Court takes judicial notice. *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016) ("A Court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.").

bankruptcy petition filed over four years ago. In November of 2015, Myers originally filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Maryland. *See In re Myers*, No. 15-26033 WIL, ECF No. 1 (Bankr. D. Md. Nov. 18, 2015) [hereinafter *Bankruptcy Case*]. Myers retained McNamee to represent him for the Bankruptcy Case. *Id.*, ECF Nos. 18, 23.

On October 18, 2016, the Trustee moved to convert Myers' Chapter 11 petition to a Chapter 7 proceeding. *Id.*, ECF No. 167. The Trustee's conversion motion asserted that, despite Myers' monthly income of $30,000, Myers had failed to pay mortgages on his several multi-million-dollar homes. When secured creditors foreclosed on the properties, Myers appealed all adverse judgments and then, in order to "thwart his secured lenders from continuing their various foreclosure proceedings," filed for bankruptcy. *Id.* at 4–5.

McNamee represented Myers in opposing the Chapter 7 conversion. *See id.*, ECF Nos. 194, 313. On February 22, 2017, the Bankruptcy Court granted the Trustee's motion and converted Myers' petition to a Chapter 7 bankruptcy. ECF No. 1 ¶ 10; *Bankruptcy Case*, ECF No. 316. Notably, the Bankruptcy Court converted the case at least in part because Myers had failed to disclose assets that would have been relevant to the payment of Myers' creditors. *See* ECF No. 6-3 at 9–10. Following the conversation, McNamee's attorneys moved to withdraw as counsel due to "irreconcilable differences." On May 2, 2017, the Bankruptcy Court granted the withdrawal motion. *Bankruptcy Case*, ECF Nos. 397, 432.

Effective February 22, 2017, the Bankruptcy Court appointed Schlossberg as Trustee of the bankruptcy estate. *Id.*, ECF No. 316. As in any Chapter 7 bankruptcy liquidation, Schlossberg took control of the bankruptcy estate to include any claims accruing before the date of conversion.

On October 25, 2017, Myers filed a pro se adversary proceeding against McNamee in the Bankruptcy Court. *See Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 17-00400, ECF No. 1 [hereinafter *Adversary Proceeding*]. In the Adversary Proceeding, Myers brought nine claims against McNamee, to include breach of contract, legal malpractice, and fraud, and generally alleged that McNamee was deficient and dishonest when representing him in the pre-conversion bankruptcy proceedings. *See id.* ¶¶ 50–200. The Adversary Proceeding Complaint, some 200 paragraphs total, primarily concerned the parties' allegedly coercive "contribution agreement" in which Myers agreed to pay to McNamee one-third of any funds released by the Bankruptcy Court to pay Myers' legal bills. *Id.* ¶¶ 30, 31–32, 34, 44.

McNamee moved to dismiss the Adversary Proceeding, arguing that, among other things, Myers lacked standing to bring the claims because the Trustee now controlled the estate which included Myers' pre-conversion claims. *Id.*, ECF No. 27 at 3–5. Instead of responding to McNamee's motion, Myers moved to amend his complaint in the Adversary Proceeding to add causes of action that accrued *after* the date of conversion. *Id.*, ECF No. 30 ¶ 15. The new claims included McNamee's supposed failure to file an opening brief in an unrelated case pending before the Maryland Court of Special Appeals. *Id.* ¶¶ 13–14. Myers further alleged while McNamee still represented him, it simultaneously undertook to represent the Trustee in another bankruptcy matter and also negotiated with the Trustee a settlement regarding McNamee's own claims against Myers' estate. *Id.* ¶¶ 10–12. The amended claims thus included breach of fiduciary duty, "legal negligence," fraud and constructive fraud, and negligent infliction of emotional distress. *Id.* ¶¶ 16–56.

On May 9, 2018 McNamee filed a renewed motion to dismiss, or in the alternative for summary judgment in the Adversary Proceeding. *Id.*, ECF No. 44. Following a hearing on

November 13, 2018, the Bankruptcy Court granted McNamee's motion, dismissing the breach of fiduciary duty and emotional distress counts without leave to refile, and entering summary judgment in McNamee's favor on the legal negligence and fraud counts. *Id.*, ECF No. 57 at 1–2.

Myers appealed the Bankruptcy Court's ruling. However, because Myers failed to designate the record properly and then failed to respond to this Court's show cause Order, this Court dismissed the appeal on October 7, 2019. *See Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 8:19-cv-00636-PX, ECF Nos. 1, 6–7.[2]

In the meantime, Myers sought in the Bankruptcy Court permission to litigate his pre-conversion claims against McNamee. Specifically, on May 31, 2018, Myers moved to compel the Trustee to abandon the estate's claims against McNamee. *Bankruptcy Case*, ECF No. 714. The Bankruptcy Court denied this motion on June 26, 2018. *Id.*, ECF No. 720.

On November 8, 2018, Myers filed this case in which he resurrects the same claims he pursued in the Adversary Proceeding: that McNamee's failed to file the Court of Special Appeals brief, ECF No. 1 ¶¶ 17, 24; that it simultaneously represented Myers and the Trustee, *id.* ¶ 69, and that it negotiated with the Trustee regarding its claim against Myers' estate, *id.* ¶¶ 35, 59, 61, 69–70. Myers similarly echoes his prior claims regarding the supposedly coercive contribution agreement. *Id.* ¶¶ 9, 18, 25, 34. Myers also asserts that McNamee was deficient in representing both Myers and Myers' wife, Barbara Ann Kelly, *id.* ¶ 26, and that it conspired with the Trustee to wrongfully settle McNamee's claims against the estate, *id.* ¶¶ 61, 70. Ultimately, Myers brings claims of breach of contract (Count I), "professional negligence" (Count II), "breach of obligations of good faith and fair dealing" (Counts III and VII), negligent infliction of

---

[2] McNamee and the Trustee ultimately reached agreement in which McNamee paid the estate $20,000 in exchange for release of claims the estate could pursue against McNamee. ECF No. 8-1; *Bankruptcy Case*, ECF No. 757. Following a hearing, the Bankruptcy Court entered an order approving this settlement on May 8, 2019. *Bankruptcy Case*, ECF No. 837.

emotional distress (Count IV), and "Conspiracy" (Count VIII) against McNamee. *Id.* ¶¶ 14–41, 54–78. Although it is difficult to discern when each wrongful act supposedly accrued, the Complaint is clear that it asserts both pre-conversion and post-conversion claims. *Id.* ¶¶ 43, 45, 48–50, 52, 56–57.

As to the Trustee, Myers brings claims of breach of contract (Count V), promissory estoppel (Count VI), "breach of obligations of good faith and fair dealing" (Count VII), and "conspiracy" (Count VIII). *Id.* ¶¶ 42–78. Myers avers that the Trustee breached an agreement wherein Myers was permitted to prosecute his claims against McNamee. According to Myers, he and the Trustee formed this agreement in open court when counsel for the Trustee stated that the Trustee would not be pursing Myers' legal malpractice claims on behalf of the estate. *Id.* ¶¶ 13, 43, 48–50, 56.

To add to the legal quagmire of Myers' own making, he has undoubtedly used (and abused) the judicial process to prolong proceedings in the bankruptcy matter and thus delay liquidation and distribution of Myers' assets. Specifically, Myers has filed no fewer than *fifteen appeals* and several other collateral actions related to 2015 singular bankruptcy, the lion's share of which have been dismissed or denied on procedural grounds. Indeed, when viewed collectively, Myers' overall objective appears largely to defer rather than reach meaningful resolution on the merits.[3]

---

[3] *See Myers v. United States Trustee*, No. 8:17-cv-01218-PX; *Myers v. Schlossberg*, No. 8:17-cv-02537-PX; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:17-cv-03396; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:17-cv-02781-PX; *Myers v. Schlossberg*, No. 8:17-cv-03846; *Myers v. Schlossberg*, No. 8:17-cv-03847; *Myers v. Schlossberg*, No. 8:18-cv-00336; *Myers v. Fitzgerald*, No. 8:18-cv-01417-PX; *Myers v. Fitzgerald*, No. 8:18-cv-01630-PX; *Myers v. Schlossberg*, No. 1:18-cv-02117-PX; *Myers v. McNamee, Hosea , Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:18-cv-02118; *Myers v. Offitt Kurman, P.A.*, No 8:18-cv-02536; *Myers v. Offitt Kurman P.A.*, No. 8:18-cv-02538-PX; *Myers v. Grisby*, No. 8:18-cv-02348-PX; *Myers v. Schlossberg*, No 8:18-cv-03783; *Myers v. McNamee, Hosea , Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:19-cv-00245-PX; *Myers v. McNamee, Hosea , Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:19-cv-00636-PX; *Myers v. United States Trustee*, No. 8:19-cv-0637; *Myers v. Cristina and Brian King Children's Trust*, No. 8:19-cv-

Myers' latest tactic of choice concerns manipulation of the bankruptcy code's automatic stay provision, 11 U.S.C. § 362.  On multiple occasions, Myers has filed new Chapter 13 petitions in the Bankruptcy Court that trigger an automatic stay in the case before this Court.[4] Myers in turn has argued to the Bankruptcy Court on his Chapter 7 case that his claims before *this* Court must be resolved before the Chapter 7 petition is to proceed.  For instance, Myers recently sought to delay the Bankruptcy Court's approval of a settlement of the estate's claims against McNamee on the grounds such claims must be adjudicated in this court, *Bankruptcy Case*, ECF No. 831—an assertion that the Bankruptcy Court easily brushed aside, pointing to its earlier ruling "that the Trustee never abandoned any potential pre-conversion claims against McNamee," *see id.*, ECF No. 833

Myers also repeatedly has failed to prosecute his various suits, and only appropriately designates records, files briefs, and responds to motions (if at all) when the Court threatens dismissal.  The result is that Myers' various lawsuits and appeals have proceeded in fits and starts.  Meanwhile, none of Myers' twenty cases thus far have proved to be meritorious.

This case presents its own microcosm of Myers' dilatory tactics.  On May 6, 2019, McNamee moved to dismiss the Complaint, and on May 16, the Trustee followed suit.  ECF Nos. 6, 9.  Instead of responding to the outstanding motions, Myers filed a suggestion of bankruptcy on June 4, 2019, informing the Court that he had filed a Chapter 13 bankruptcy petition in case No. 19-17428 in the United States Bankruptcy Court for the District of

---

02269; *Myers v. Fitzgerald*, No. 1:19-cv-03418-ELH; *Myers v. McNamee, Hosea , Jernigan, Kim, Greenan & Lynch, P.A.*, No. 8:19-cv-03677-PX.

[4] Myers has filed two such Chapter 13 petitions in the past year.  The first in the United States Bankruptcy Court for the District of Delaware on February 28, 2019, *see In re Myers*, No. 19-10392 (Bankr. D. Del.), ultimately proved fruitless.  The Delaware Bankruptcy Court lifted the automatic stay to allow Myers' various appeals to proceed and went on to dismiss the petition because Myers had no connection to Delaware.  *Id.*, ECF No. 24 at 1–3. The second petition, filed in the United States Bankruptcy Court for the District of Maryland on May 31, 2019, s*ee In re Myers*, No. 18-13244 (Bankr. D. Md.), was dismissed on September 9. 2019.  *Id.*, ECF No. 105.

Maryland, and thus this case must be stayed pursuant to the § 362 automatic stay provision. ECF No. 10.

On October 8, 2019 the Trustee filed notice that Myers' Chapter 13 petition had been dismissed, and that Myers was now barred from filing another petition for 180 days. ECF No. 13. The next day, the Court issued a Letter Order alerting Myers of his failure to respond to the pending motions to dismiss and directing that he respond within 14 days or the matter would be adjudicated on the merits without him. ECF No. 14. Myers twice asked for extensions of time to file his response, which this Court granted; the Court also made clear that no further extensions of time would be granted. ECF No. 15, 17. Myers' response was due November 12, 2019. ECF Nos. 16, 19.

On November 12, instead of responding to the merits of the motion, Myers filed yet *another* suggestion of bankruptcy, this time claiming that the case must be stayed because wife, who is *not a party to this matter,* had filed a bankruptcy petition in the United States Bankruptcy Court for the District of Delaware.[5] ECF No. 20. Myers' latest request for a stay elicited opposition and a motion to strike the suggestion of bankruptcy. ECF Nos. 21, 22. The Court now turns to the Trustee's motion to strike Myers' latest suggestion of bankruptcy, as well as the pending motions to dismiss.

## II.       Motion to Strike Suggestion of Bankruptcy

As an initial matter, the Court must determine whether Kelly's bankruptcy petition requires the Court to stay this case. The bankruptcy code's automatic stay provision "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial

---

[5] Kelly is also a party to the November 2015 Bankruptcy Petition, and, often in concert with Myers, frequently notices her own scattershot bankruptcy appeals. *See Kelly v. United States Trustee*, 8:17-cv-01239-PX; *Kelly v. Schlossberg*, 8:17-cv-03846-PX; *Myers v. Schlossberg*, 8:18-cv-00336-PX; *Kelly v. Grigsby*, 8:18-cv-02345-PX; *Myers v. Offitt, Kurman, P.A.*, 8:18-cv-02536-PX; *Myers v. Schlossberg*, 8:18-cv-03783-PX.

administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a). Thus, "[a]mong other things, the stay bars commencement or continuation of lawsuits to recover from the debtor, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. ____ (2020).

Myers pushes the bounds of reality with this issue, but it must nonetheless be addressed. The automatic stay provision applicable to *Kelly*'s bankruptcy has no force and effect in this case because Myers' is *not* the debtor in Kelly's Delaware Bankruptcy petition. The automatic stay provision "is generally said to be available only to the debtor, not third-party defendants or co-defendants." *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126 (4th Cir. 1983) ("[T]he plain wording of the statute . . . provides for an automatic stay of any judicial proceeding 'against the debtor.' . . . That insulation, however, belongs exclusively to the 'debtor' in bankruptcy." (quoting § 362(a)(1)). Quite simply then, there is no basis to apply the stay provision to cases involving Myers and not Kelly.

Alternatively, even if Myers could somehow be construed as a "debtor" in Kelly's Delaware Bankruptcy action—which he cannot—the automatic stay provision still does not apply. This case is not an action brought "against the debtor," 11 U.S.C. § 362(a), but rather an action brought by Myers. Thus, the automatic stay provision, by its plain terms, does not reach an action where the debtor is the plaintiff. *See MTGLQ Inv'ers, L.P. v. Guire*, 286 F. Supp. 2d 561, 563–64 (D. Md. 2003); *McNeil v. Maryland*, No. DKC 11-2495, 2012 WL 3643899, *2 (D. Md. Aug. 22, 2012) ("As the plain language of this statute suggests, the automatic stay applies to an action against, rather than by, the debtor."); *see also Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("[Section 362(a) does not address actions

brought *by* the debtor which would inure to the benefit of the bankruptcy estate.").

Myers cites *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) and argues that only the Bankruptcy Court has jurisdiction to "grant relief from the stay." ECF No. 24 at 1–4. But this argument misstates the law. First, *Celotex* did not involve interpreting the scope of the § 362 automatic stay provision at all. *See Celotex*, 514 U.S. at 306–13. Second, it is otherwise settled that district courts may exercise "concurrent jurisdiction . . . to determine the applicability of the automatic stay with respect to litigation pending before" them. *In re Warren*, No. 17-22544, 2019 WL 3995976, at *6 (Bankr. D. Md. Aug. 22, 2019) (citing *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) and *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985)). This case, in fact, vividly illustrates why the district court must be empowered to reject frivolous invocations of the automatic stay provision so as to guard against abuses of judicial process.

Myers next contends that because "conceivably" Kelly's bankruptcy case could have some effect on Myers' estate, a stay is warranted. To support his "conceivability" test, Myers points to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). But again, Myers misrepresents the law. *Pacor* analyzed whether a matter was sufficiently related to a bankruptcy proceeding so as to confer subject matter jurisdiction under 28 U.S.C. § 1471 (now codified at 28 U.S.C. § 1334) and had nothing to do with the applicability of the automatic stay provision. *See id.* The proper test is not whether this case could conceivably affect Myers' estate, but rather whether the action is one "against" Myers. 11 U.S.C. § 362(a).

In this Court's view, Myers once again attempts, seemingly in bad faith, to manufacture further delay in the resolution of his claims. The Court cannot countenance Myers' now routine abuses of process to defer ultimate resolution on the merits. The motion to strike is granted. The

Court next addresses Defendants' motion to dismiss.

## II.    Motions to Dismiss

### A.  Standard of Review

Motions to dismiss under Rule 12(b)(1) challenge a court's authority to hear the matter. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  In determining whether jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (internal marks and citation omitted); *see also Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 154 (4th Cir. 2016).  Where the defendant contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," the Court construes the factual allegations as true and most favorably to the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  Whether the Court retains subject matter jurisdiction must be decided before reaching the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

By contrast, the purpose of a motion to dismiss under Rule 12(b)(6) "is to test the sufficiency of the complaint." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).  A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  In other words, there must be sufficient allegations to render the plaintiff's claims facially plausible, or to permit reasonable inference that the

defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In addition, a court may consider facts and documents subject to judicial notice without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

Because Myers proceeds pro se, the Court construes the Complaint liberally to ensure that potentially meritorious claims survive challenge. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). That said, a court cannot ignore a pro se plaintiff's clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985))). When reviewing pro se complaints, a court must not abdicate its "legitimate advisory role" to become an "advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

## B. Analysis

Both the Trustee and McNamee move to dismiss Myers' Complaint in its entirety. The Trustee contends that the Court is without subject matter jurisdiction to hear Myers' claims against him because Myers did not comply with the *Barton* doctrine by obtaining leave of the Bankruptcy Court to file suit in this Court. Meanwhile, McNamee asserts that Myers lacks standing to bring any pre-conversion claims against McNamee because the claims are part of the

bankruptcy estate now within the exclusive control Trustee.  As to any post-conversion claims, McNamee contends that res judicata bars Myers' suit.  Alternatively, McNamee contends that several of Myers' claims must be dismissed as legally insufficient.  The Court addresses each of these arguments in turn.

### 1.    Claims Against the Trustee Under the *Barton* Doctrine

The Court first takes up the Trustee's argument that Myers' claims are precluded by the *Barton* doctrine.  The Court agrees and finds that it is without jurisdiction to entertain Myers' claims against the Trustee.

The *Barton* doctrine derives from the Supreme Court's decision *Barton v. Barbour*, 104 U.S. 126 (1881) and stands for the proposition "that a trustee cannot be sued without leave of the bankruptcy court."  *Gordon v. Nick*, 162 F.3d 1155 (4th Cir. 1998) (unpublished table decision).  As the United States Court of Appeals for the Fourth Circuit has explained, the *Barton* doctrine covers any "acts committed in [the trustee's] official capacity," as measured by "the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought."  *McDaniel v. Blust*, 668 F.3d 153, 156–57 (4th Cir. 2012).  The Trustee's "[a]cts are presumed to be part of the duties of the trustee or his counsel 'unless Plaintiff initially alleges at the outset facts demonstrating otherwise.'"  *Id.* (quoting *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006)).  A Trustee acts within his official role when "recovering assets for the estate."  *Id.* at 157.

The *Barton* doctrine "serves the principle that a bankruptcy trustee 'is an officer of the court that appoints him,' and therefore that court 'has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.'"  *Id.* (quoting *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996)).  Practically,

the doctrine prevents the role of trustee from becoming an "irksome duty" that demands high malpractice premiums and also "enables the bankruptcy courts to monitor the work of the trustees they have appointed." *Id.* (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). If a plaintiff brings suits in violation of the *Barton* doctrine, the Court is without subject matter jurisdiction to hear the case. *See id.* at 156–57.

Myers' claims against the Trustee clearly run afoul of the *Barton* doctrine. Each contention concerns acts undertaken in Schlossberg's official capacity as Trustee. Myers breach of contract and promissory estoppel claims are premised on a supposed agreement with the Trustee that Myers could prosecute his claims even though they were part of the estate. ECF No. 1 ¶¶ 42–53. Likewise, Myers' "breach of good faith and fair dealing" claim asserts that the Trustee "deliberately dishonored" the terms of this agreement. *Id.* ¶¶ 54–59. As to the "conspiracy" claim, the Complaint seems to allege that Trustee and McNamee surreptitiously negotiated a side deal to settle McNamee's claims against Myers' estate while McNamee represented Myers. ECF No. ¶¶ 60–71. Although the Complaint is in many ways difficult to parse, one thing is clear: the allegations against Schlossberg are inextricably tied to the Trustee's official duties of "recovering assets for the estate." *McDaniel*, 668 F.3d at 157.

Yet, Myers made no effort to obtain leave of the Bankruptcy Courts. Accordingly, Myers has failed to comply with the *Barton* doctrine and this Court is without subject matter jurisdiction as to any claims against the Trustee. *See id.* at 156–57. These claims are thus dismissed with prejudice.[6]

---

[6] Given the dismissal under the *Barton* doctrine, the Court does not reach the Trustee's contention that dismissal is warranted for failure to effectuate timely service. *See* ECF No 9-1 at 6–9. However, it is undisputed that Myers served the Trustee 168 days after the Complaint was filed, and even then, only after the Court issued a show-cause order threatening to dismiss the case. *See* ECF No. 4. Myers' insufficient service is evident and would result in dismissal on that basis alone. *See Mendez v. Elliot*, 45 F.3d 75, 78–79 (4th Cir. 1995) (explaining that Federal Rule of Civil Procedure 4(m) requires dismissal for untimely service absent a showing of "good cause").

## 2.     Standing to Bring Pre-Conversion Claims against McNamee

The Court will next consider the claims against McNamee.  McNamee argues that the

Court lacks jurisdiction to hear any pre-conversion claims because the Trustee has not

abandoned them under 11 U.S.C. § 554(a).  The Court agrees.

Upon the commencement of a Chapter 7 bankruptcy proceeding, the debtor's "assets

immediately are transferred to the bankruptcy estate."  *Martineau v. Wier*, 934 F.3d 385, 388

(4th Cir. 2019).  This estate "comprise[s] . . . a broad range of both tangible and intangible

property interests," to include "non-bankruptcy causes of action that arose out of events

occurring prior to the filing of the bankruptcy petition."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d

337, 342 (4th Cir. 2013).  The bankruptcy Trustee then "liquidates that property and distributes

the proceeds to the debtor's creditors."  *Martineau*, 934 F.3d at 388.

"[I]f a cause of action is part of the estate of the bankrupt[,] then the trustee alone has

standing to bring that claim."  *Wilson*, 717 F.3d at 342 (quoting *Nat'l Am. Ins. Co. v. Ruppert*

*Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999)).  A Trustee, however, may abandon a claim

if it is "of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *Martineau*, 934

F.3d at 384.  Unless and until the Trustee abandons the claim, however, and the bankruptcy court

makes a companion finding as to the abandonment,  *Steyr-Daimler-Puch of Am. Corp. v.*

*Pappas*, 852 F.2d 132, 136 (4th Cir. 1988), the debtor lacks standing and the Court is without

subject matter jurisdiction to hear the case, *Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp.

3d 250, 254 (D. Md. 2016); *Miller v. Pac. Shore Funding*, 287 B.R. 47, 48–49 (D. Md. 2002)

("Standing undergirds subject-matter jurisdiction.").

As the Bankruptcy docket makes clear[7], the Trustee never abandoned the pre-conversion

---

[7] The Court may take judicial notice of the bankruptcy docket for purposes of determining whether it has
jurisdiction to hear a matter, to include a party's standing to bring the case.  *See Nichols v. Green Tree Servicing,*

claims against McNamee. Quite to the contrary, the Bankruptcy Court's has ruled more than once that these claims were part of the estate, and McNamee and the Trustee have even entered into a settlement agreement as to any causes of action accruing pre-settlement. *Bankruptcy Case*, ECF Nos. 714, 833. Myers, in fact, is keenly aware that the claims have not been abandoned as reflected in his separate challenges to the sufficiency of the settlement agreement. *Id.*, ECF No. 778. Accordingly, this Court is confident that not only does Myers lack standing, but he knows it, and he nonetheless pursues this litigation in an effort to defer and delay final resolution in the Bankruptcy Court.

Myers appears to argue alternatively that the Trustee *orally* abandoned the claims against McNamee. *See* ECF No. 1 ¶ 67. In support, Myers points to counsel for the Trustee stating that as to the pre-conversion claims, "the Trustee has nothing to abandon" because he had "not heard anything from Mr. Myers . . . that would cause [him] to pursue a malpractice action" against McNamee. *Id.* This does not, however, amount to a "judicial determination that the trustee in bankruptcy has abandoned the claim." *Pappas*, 852 F.2d at 136. Myers lacks standing to pursue the pre-conversion claims, and thus, they must be dismissed with prejudice.

### 3. Post-Conversion Claims and Res Judicata

Likely recognizing that "a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing," *Harris v. Veigelahn*, 135 S. Ct. 1829, 1835 (2015), Myers has also brought post-conversion claims against McNamee. McNamee, however, asserts that res judicata bars any claim that accrued after the Chapter 7 conversion. The Court agrees.

---

*LLC*, 173 F. Supp. 3d 250, 253 n.2 (D. Md. 2016); *see also Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records.").

Res judicata, or claim preclusion, directs that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). Res judicata precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153–54. "This is a 'practical doctrine' that looks to whether a party 'has previously had a fair shot with respect to the claims raised in the present action.'" *Chin-Young v. United States*, 774 F. App'x 106, 114 (4th Cir. 2019) (quoting *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017)).

Res judicata applies when the movant demonstrates: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Jones v. S.E.C.*, 115 F.3d 1173, 1178 (4th Cir. 1997) (citations omitted); *see Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). A judgment is final on the merits even if pending appeal. *See Ga. Pac. Consumer Prods., LP v. Drehle Corp.*, 710 F.3d 527, 533 n.8 (4th Cir. 2013).

Additionally, and importantly here, res judicata extends to claims that could have been asserted and litigated in the original suit. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013). That is, courts apply the "'transactional approach' . . . meaning that 'res judicata will bar a newly articulated claim if it is based on the same underlying transaction involved in the first suit and could have been brought in the earlier action.'" *Providence Hall*

*Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 282 (4th Cir. 2016) (quoting *Clodfelter*, 720 F.3d at 210) (alterations and some quotation marks omitted).

Although it is generally true that "affirmative defenses will not be considered on a motion to dismiss . . . res judicata is an exception to this general rule." *Chin-Young*, 774 F. App'x at 114 n.3; *Andrews*, 201 F.3d at 524 n.1.  "[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews*, 201 F.3d at 524 n.1 (considering a res judicata defense on a 12(b)(6) motion to dismiss because the plaintiff did "not dispute the factual accuracy of the record of his previous suit"); *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th. Cir 2006).

Myers' unsuccessful adversary proceeding against McNamee in the Bankruptcy Court meets all three elements for res judicata and consequently bars re-litigation of Myers' post-conversion claims here.  First, the Bankruptcy Court's dismissal of Myers' adversary proceeding constitutes a "final judgment" on the merits in a previous suit.  The Bankruptcy Court heard Myers' post-conversion claims and either dismissed them with prejudice or entered judgment in McNamee's favor.  *See Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. GLR-15-3276, 2016 WL 495606, at *3 (D. Md. Feb. 9, 2016), *aff'd*, 667 F. App'x 33 (4th Cir. 2016) ("Dismissals for failure to state a claim under Rule 12(b)(6) and summary judgment are final judgments on the merits for purposes of res judicata.").  Second, and undeniably, the identities of the parties are the same here as in the adversary proceeding.  Third, under the transactional approach, Myers' claims in this case are one and the same as the adversary proceeding claims.  Although the precise labels of the counts vary slightly, both actions accuse McNamee of representing Myers' ineffectively and in a manner that put the firm's interest over Myers' as the client.  The claims in

both matters also involve similar alleged misconduct within the same attorney-client relationship and during the same time frame. Accordingly, because the "underlying transaction" is the same in both cases, the Court finds that Myers' currently claims were, or could have been, brought in the Adversary Proceeding. *See Providence Hall*, 816 F.3d at 282. Thus, the post-conversion claims are barred by res judicata and must be dismissed with prejudice.

### 4. Dismissal for Failure to State a Claim

Alternatively, as to the claims for "conspiracy," and "breach of the obligation of good faith and fair dealing," and negligent infliction of emotional distress, each are capable of dismissal under Rule 12(b)(6) as failing to state a cause of action.

An alleged breach of the implied duty of good faith and fair dealing, is "'better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action.'" *Gurbani v. Johns Hopkins Health Sys. Corp.*, 237 Md. App. 261, 306 (2018) (quoting *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 170 Md. App. 457, 472 (2006)); *see also Blondell v. Littlepage*, 413 Md. 96, 113–14 (2010). Likewise, conspiracy is not a separate tort capable of sustaining an award of damages, *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014), but rather is a "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221 (1970)). Accordingly, for a conspiracy claim to survive challenge, a plaintiff must aver plausibly an underlying tort to which the defendants allegedly conspired to commit. As for negligent infliction of emotional distress, it is simply not a cause of action recognized in Maryland. *Miller v. Bristol-Myers Squibb Co.*, 121

F. Supp. 2d 831, 839 (D. Md. 2000).[8]  Thus, these claims are independently subject to dismissal.

*See Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 465–66 (D. Md. 2016) (dismissing

independent count of civil conspiracy); *CapitalSource Fin., LLC v. Pittsfield Weaving Co., Inc.*,

571 F. Supp. 2d 668, 673 (D. Md. 2006) (dismissing independent count of breach of good faith

and fair dealing).  These claims, therefore, are alternatively dismissed under Rule 12(b)(6) as

legally insufficient.

## I.      Conclusion

For the foregoing reasons, the Trustee's motion to strike and both Defendants' motions to

dismiss are granted.


 2/13/2020                                                           /s/
Date                                                        Paula Xinis
                                                            United States District Judge


---

[8] If Myers intended to bring a claim of Intentional infliction of emotional distress ("IIED"), it also fails. Although an IIED is a recognized cause of action, it is reserved for only matters in which a defendant exhibits the most extreme and outrageous conduct that causes the plaintiff severe emotional distress.  *See Batson v. Schiflett*, 325 Md. 684, 733–34 (1992); *Hussy v. Hous. Auth. of Balt.*, No. CCB-17-2841, 2018 WL 1947049, at *4 (D. Md. Apr. 24, 2018) ("Maryland has been clear that liability for the tort of intentional infliction of emotional distress should be imposed sparingly." (internal quotation marks and citation omitted)).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Batson*, 325 Md. at 733 (*quoting Harris v. Jones*, 281 Md. 560, 567 (1977)).  Nothing in the Complaint, taken as true and most favorably to Myers, meets this standard. Myers' boilerplate recitation of suffering "severe emotional distress and mental pain and suffering with physical manifestations," is a legal conclusion couched as a fact, also does not suffice.  *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." (internal alterations and citations omitted)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.").